**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **CELERITY IP, LLC, ASUS TECHNOLOGY LICENSING INC., AND INNOVATIVE SONIC LTD.**, <br><br> **Plaintiffs,** <br><br> v. <br><br> **AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AT&T SERVICES, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, T-MOBILE USA, INC. AND ERICSSON, INC.,** <br><br> Defendants. | **Civil Action No.** <br><br> **2:24-CV-00721-JRG-RSP** <br><br><br> **JURY TRIAL** |

**PLAINTIFFS' COMPLAINT FOR VIOLATION OF U.S. ANTITRUST LAWS AND
TEXAS STATE LAW**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff Celerity IP, LLC ("Celerity"), Plaintiff ASUS Technology Licensing Inc. ("ATL"), and Plaintiff Innovative Sonic Limited ("IS") (collectively, "Plaintiffs"), and file this, their Complaint For Violation Of U.S. Antitrust Laws And Texas State Laws against Defendants AT&T Corp., AT&T Mobility LLC, AT&T Mobility II LLC, AT&T Services, Inc. (collectively, the "AT&T Defendants"), Cellco Partnership d/b/a Verizon Wireless, T-Mobile USA, Inc., and Ericsson, Inc. (collectively, "Defendants") and, for cause, would respectfully show unto the Court as follows:

## I.     PARTIES

1.     Plaintiff Celerity IP, LLC is a limited liability company organized and existing under the laws of the State of Texas.

2.     Plaintiff ASUS Technology Licensing Inc. ("ATL") is Taiwanese corporation, with its principal place of business located at No. 115, Li-De Rd., Beitou District, Taipei, Taiwan, R.O.C. ATL was established in April 2022 by ASUSTeK Computer Inc. ("ASUSTeK") to continue ASUSTeK's long history of development in and contributions to the field of wireless communication technologies since 2000. ATL's mission includes active development of 3G, 4G, and 5G wireless communication technologies, as well as management of an innovative patent portfolio concerning such technologies which has brought abounding contributions to the industry through standards contributions and licensing. ATL is the owner by assignment of patents, originally owned by ASUSTeK, that are critically important to 3G, 4G, and 5G technologies.

3.     Plaintiff Innovative Sonic Limited ("Innovative Sonic") is a corporation organized and existing under the laws of the Republic of Mauritius, with its principal place of business at 6F-1, No. 319, Sec. 4 Chung Hsiao E. Rd., Taipei City 106078, Taiwan, R.O.C. Innovative Sonic is the owner by assignment of patents that are critically important to 3G, 4G, and 5G technologies.

4.     Defendant AT&T Corp. is a corporation. Since February 11, 1925, AT&T Corp. has been registered to do business in Texas under Texas SOS file number 0000480306. AT&T Corp. may be served through its registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

5.     Defendant AT&T Mobility LLC is a limited liability company. Since November 21, 2000, AT&T Mobility LLC has been registered to do business in Texas under Texas SOS file number 0707861123. AT&T Mobility LLC may be served through its registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

6. Defendant AT&T Mobility II LLC is a limited liability company. AT&T Mobility II LLC is identified by the Texas Secretary of State as having an "ACTIVE" right to transact business in Texas under Texas taxpayer number 18416599704, associated with the Texas mailing address 101 N. Saint Marys St., Rm. 9-Y01, San Antonio, Texas 78215-2109. AT&T Mobility II LLC may be served through its registered agent for service, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware, 19801. On information and belief, AT&T Mobility II LLC may also be served through AT&T Mobility LLC's registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

7. Defendant AT&T Services, Inc. is a corporation organized and existing under the laws of Delaware. Since April 5, 1996, AT&T Services, Inc. has been registered to do business in Texas under Texas SOS file number 0010935606. AT&T Services, Inc. may be served through its registered agent for service, CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

8. The AT&T Defendants principal place of business is 208 S Akard ST, Dallas, Texas 75202.

9. Defendant T-Mobile USA, Inc. ("T-Mobile") is a corporation. T-Mobile is registered to do business in the State of Texas and may be served through its registered agent for service, The Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

10. Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") is a partnership. Verizon Wireless is registered to do business in the State of Texas and may be served through its registered agent for service, The Corporation Trust Company, located at 1209 Orange Street, Wilmington, Delaware 19801.

11.     Defendant Ericsson, Inc. ("Ericsson") is a corporation. Ericsson is registered to do business in the State of Texas and may be served through its registered agent for service, Capitol Corporate Services, Inc., located at 1501 S. Mopac Expressway, Suite 220, Austin, Texas 78746. Ericsson's principal place of business is in Texas.

## II.     JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over federal antitrust claims pursuant to 15 U.S.C. §§ 15 and 26 and 28 U.S.C. § 1331.

13.     This Court has supplemental jurisdiction over the Texas Unfair Competition claims pursuant to 28 U.S.C. § 1367.

14.     Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute.

## III.     FACTS

15.     This lawsuit concerns certain 3G/4G/5G patents owned by ATL, IS and/or ASUSTeK, for which Celerity has certain exclusive rights to negotiate licenses (the "Wireless Patents").

16.     AT&T Defendants, T-Mobile, and Verizon Wireless (the "Service Providers") are three wireless service providers who collectively represent ~99% of the wireless service market in the United States and Texas.[1]

17.     Not later than 2022, Celerity initiated independent, good faith efforts to license the Wireless Patents to each of the Service Providers. Each Service Provider refused to engage in a good faith licensing discussion concerning the Plaintiffs' valuable patents. Instead, the Service

---

[1] Ex. 1 (FCC's 2022 Communications Marketplace Report, available at https://docs.fcc.gov/public/attachments/FCC-22-103A1.pdf), at 58 (calculating combined market share of 98.9% for AT&T, T-Mobile, and Verizon).

Providers have entered into a contract, combination, or conspiracy to unreasonably restrain trade and impose a group boycott on Plaintiffs.

18.     Under these agreements, the Service Providers have met, conferred, conspired, and agreed among themselves that they would not accept licenses from Plaintiffs under terms and conditions offered by Plaintiffs but, instead, would infringe and collectively jointly refuse to license the Wireless Patents.

19.     As discussed herein, the meetings, discussions, and communications between the Service Providers (most of which have been concealed from Plaintiffs) have taken place for the express purpose and with the effect of creating a uniform, agreed-upon course of action among them in refusing to accept a license under the Plaintiffs' patents except upon terms which the Service Providers could jointly dictate.

20.     The Service Providers constitute nearly the total demand for the licensing of the Wireless Patents in the United States in the service provider market and collectively enjoy near total market power. Together, the Service Providers have exercised their power to control the acceptance and terms and conditions of licenses from Plaintiffs. This power is augmented by the willingness and agreement of the Service Providers to infringe the Wireless Patents until such time as Plaintiffs capitulate by either going out of business, declining to enforce the patents, or offering Service Providers patent license terms below fair market value. Plaintiffs have thereby been injured in their business or property by their inability to obtain the competitive market rate for the licensing of the Wireless Patents that they would have been able to achieve, but for the conspiracy alleged herein.

21.     The Service Providers have agreed to refuse to individually negotiate licenses for the Wireless Patents, in part to achieve wholesale pricing terms at a significantly reduced cost

relative to what an individual Defendant might license. If one of the three Service Providers negotiated a license with Plaintiffs individually, the remaining two Service Providers would have been left with significantly less market power with which to force a lower "wholesale" price for a license. Additionally, that "wholesale" price would have to be paid by one less company, which would be economically significant to each remaining Service Provider. Thus, the three Service Providers were economically interdependent such that their cooperation was essential to achieving the lowest (below market) price for a license under the Wireless Patents.

22. The purpose and effect of the conspiracy, combination, or agreement is to combine the purchasing power of the Service Providers with respect to the acquisition of the rights to use the Wireless Patents, and acquire a sufficient share of the purchasing power for the Wireless Patents so as to be able to drive the price paid for the use of the Wireless Patents below the rates that would be set by the unfettered competitive market forces or, in the alternative, to have the Service Providers collectively refuse to deal with Plaintiffs at all if Plaintiffs would not meet their joint demand for a license of the Wireless Patents at below a competitive market rate.

23. When all three Service Providers effectively agreed to only negotiate a license together, they became endowed with sufficient market power to force a low enough price for a license that makes it economically advantageous to negotiate only collectively. These agreements are intended to lower the market value of the Wireless Patents.

24. In furtherance of the conspiracy, the Service Providers have agreed to limit their individual freedom of action in dealing with Plaintiffs, even against their private economic interests; they have shared information through their common counsel concerning Plaintiffs and its patents and licensing positions; and they have agreed not to negotiate with Plaintiffs without consulting and agreeing with other members of the conspiracy concerning the acceptability of the

terms offered by Plaintiffs, all for the purpose of assuring uniformity of action in accepting or rejecting Plaintiffs' efforts to grant licenses under its patents and, thus, controlling the effective royalty rate and terms under which the patents are licensed.

25. The Service Providers' contract, combination, or conspiracy to unreasonably restrain trade and impose a group boycott on Plaintiffs has become clear from the uniformity of action by the Service Providers, even against their own individual economic interests.

26. Before the retention of identical national counsel, the Service Providers behaved in asynchronous and different manners. Co-incident with the retention of the identical national counsel, the Service Providers began to adopt a uniformity of action in the terms and conditions they demanded. Individuals at the Service Providers who have affected this anti-competitive agreement would include but not be limited to Geoff Sutcliffe and Steve Pentlicki (AT&T), Nicholas Max Caldwell (T-Mobile), and Neer Gupta (Verizon).

27. AT&T, T-Mobile, and Verizon are acting together to ensure that the individual Service Providers do not operate independently in evaluating the terms and conditions of a license under the Wireless Patents but instead demand identical terms. For example, Plaintiffs' negotiations with the Service Providers indicates that they are orchestrating the individual Service Providers' correspondence with Plaintiffs to ensure uniformity of action and that none of the individual Service Providers negotiates an independent license with Plaintiffs.

28. Each of the Service Providers is demanding effectively identical terms and conditions for the patents in suit, which could only occur as a result of their anti-competitive agreement. The positions in the licensing communication from each of the Service Providers are for all practical purposes substantively identical, which provides substantial evidence of the anti-competitive agreement and no coincidental parallel but independent action.

29.     The Service Providers' uniformity of action demonstrates an organized effort to collectively refuse to license, thereby forcing license prices below a competitive level.

30.     In addition to this coordinated behavior, the Service Providers have acted against their individual economic interests by refusing to engage in independent discussions or negotiations with Plaintiffs. Each of the three Service Providers engaged in conduct contrary to its individual self-interest, absent an understanding among them to negotiate collectively and not individually with Plaintiffs, so that the price of a license would be driven below a competitive market rate. This is evidenced by the fact that after the retention of common counsel, which was co-incident with the anti-competitive agreement, the terms and conditions the parties were demanding changed to become in lockstep with the other members of the conspiracy.

31.     The effect of the horizontal agreements has been the suppression of the market price that each individual Service Provider would have otherwise paid in the absence of the agreements and the refusal by each of the Service Providers to deal with Plaintiffs except at prices substantially below the competitive rate.

32.     The reason for this harm is from the contract, combination, or conspiracy of the Service Providers, not from mere individual business disputes between truly independent parties in that, as set forth above, without the group action, each Service Provider would inevitably have negotiated with Plaintiffs independently, which would yield a proper value-based royalty for use of the patented technology.

33.     Unless restrained by this Court, the Service Providers will continue to combine or conspire so as to anti-competitively and artificially suppress the price paid by the Service Providers for licenses to the Wireless Patents or, in the alternative, to effectuate a collective group refusal to license the Wireless Patents at competitive rates.

34. In sum, the Service Providers have entered into a contract, combination, or conspiracy that amounts to a violation of the antitrust laws—a price-fixing agreement among direct competitors, e.g., setting the limit on what they will agree to pay for a license. If the Service Providers negotiated with Plaintiffs independently and separately, a price could be set for each license of the Wireless Patents independent of the other and those who are late to accept a license might justifiably pay a greater royalty. Such actions by the Service Providers are illegal *per se* and also qualify as an unlawful restraint of trade under the rule of reason.

35. The Service Providers have a long history of illegal collective action. Plaintiffs anticipate that discovery will establish a pattern of illegal collective action. For example, the Federal Trade Commission has found the Service Providers liable for collectively executing a program whereby location data of their customers was unlawfully sold to aggregators. By acting collectively, and because they have monopoly power, the Service Providers were able to fix the terms available to customers – all customers had to accept the sale of their location and had no place to turn if they desired not to accept this unlawful activity.

36. The Service Providers are customers of Ericsson. Ericsson is assisting the Service Providers in their group boycott by extorting ASUSTeK.

37. Ericsson, on behalf and with the cooperation of AT&T, T-Mobile, and Verizon, has sought to undermine Celerity's exclusive rights by demanding that ASUSTeK negotiate directly with Ericsson for a license to the Wireless Patents. It has attempted to extort ASUSTeK to breach its obligations to Celerity by threatening to and maintaining legal proceedings outside of the United States against ASUSTeK if ASUSTeK does not breach its obligations to Celerity. It has also attempted to extort ASUSTeK to breach its obligations to Celerity by maintaining that ASUSTeK

requires a license to Ericsson patents but making the grant of a license contingent on ASUSTeK agreeing to breach its obligations to Celerity.

38.     Specifically, on June 14, 2024, Patrico Delgado, located in Texas, made clear that it will grant ASUSTeK a license to the patents owned by Ericsson that Ericsson claims are essential or are found to be essential to any cellular or H.26x standards employed by ASUSTeK at a rate of $5 per phone and tablet only if ASUSTeK grants Ericsson a "cross-license for Ericsson 4G/5G infra equipment" that is "not subject to royalties." The Wireless Patents include 4G/5G patents and the right to license these patents rests exclusively with Celerity. Ericsson is extorting ASUSTeK to interfere with Celerity's exclusive rights and to destroy Celerity's opportunity to generate revenue by Ericsson's step of filing foreign lawsuits, threating to file foreign lawsuits, and making access to Ericsson patents it claims are technically essential contingent on ASUSTeK granting a royalty free license to the Wireless Patents. This is independently unlawful behavior for multiple reasons.

39.     First, Ericsson has knowledge of Celerity's exclusive rights in the Wireless Patents on or about April 3, 2024 when it admitted this knowledge in correspondence written from its Texas headquarters. Nonetheless, it is extorting ASUSTeK to grant a license to the Wireless Patents.

40.     Second, Ericsson has made clear in correspondence to ASUSTeK that it knows that ASUSTeK's "licensing agent" is responsible and has sole control over the Wireless Patents, candidly admitting in correspondence that "Asustek instead contracted with a licensing agent to initiate litigation against Ericsson's customers in late 2023[.]" Nonetheless, it is extorting ASUSTeK to grant a license to the Wireless Patents.

41. Third, Ericsson is engaging in unlawful tying, whereby it is making ASUSTeK's access to the monopoly rights it owns via its technically "essential" "cellular" and "H.26x" patents contingent upon royalty free access to the Wireless Patents which ASUSTeK does not control.

42. Fourth, Ericsson has contractual obligations to the standards setting organizations that govern the decision to include patents technically essential in the "cellular" and "H.26x" standards. These organizations which Ericsson is a party to have policies that prohibit Ericsson from requiring a grant back of patent rights controlled by a third party (Celerity), much less a royalty free grant back, as the price for granting access to its technically "essential" "cellular" and "H.26x" patents to ASUSTeK. For example, Ericsson is contractually bound by the ETSI Patent Policy as to its technically essential cellular patents, which makes no provision for requiring a royalty free grant back of patents controlled by third parties such as Celerity. Ericsson's agreement to be bound by these patent policies was the predicate for the inclusion of its technically essential patents in the standards. By secretly planning to make the grant of rights to its technically essential patents contingent on royalty free grant backs to patents controlled by third parties, it made false representations to the standard setting organizations to induce the inclusion of its patents in the "cellular" and "H.26x" standards.

43. Ericsson seeks to induce ASUSTeK to breach its obligations to Celerity, including but not limited to by making rights to Ericsson's own patents which Ericsson claims ASUSTeK needs rights to contingent upon ASUSTeK breaching its obligations to Celerity, and by threatening and maintaining foreign legal process against ASUSTeK unless it breaches its obligations to Celerity. Moreover, because of the risk that ASUSTeK will be compelled to breach and grant Ericsson a license to the Wireless Patents, Celerity's ability to successfully license the Service

Providers, which are Ericsson customers, is substantially interfered with, because the Service Providers maintain that if Ericsson is licensed, they do not need a license to the Wireless Patents.

44.     As a result of Ericsson's conduct, Celerity has incurred damages in the form of, among other things, the loss of its expectancy under its contractual rights to negotiate and generate licensing revenue from the Wireless Patents, the harm to its reputation in the industry as ASUSTeK, IS, and ATL are directly or indirectly being extorted to no longer use its services which deters other potential customers from seeking to use Celerity's services, and the costs of the legal advice and analysis to ensure that Celerity rights are respected separate from the costs of initiating this lawsuit.

45.     The harms caused by the Defendants occur within the State of Texas and harms the Texas market. Celerity is a Texas corporation with its principal place of business in Texas. Celerity is entitled to a substantial portion of the revenue generated from any successful licensing of the Service Providers. Each of the Service Providers maintain an extensive commercial presence within the State of Texas. *See, e.g.*, https://www.t-mobile.com/stores/tx/; https://www.verizon.com/stores/state/texas/; https://www.att.com/stores/texas. Horizontal group boycotts regarding the Wireless Patents deters their creator from further investing in cellular innovation. The Service Providers do not heavily invest in cellular innovation, they simply implement cellular communication standards created by groups such as 3GPP which ASUSTeK participates in and contributes innovations to. Over time this behavior will decrease the quality of the cellular networks Texas consumers have access to because contributors such as ASUSTeK will not be motivated to provide access to their best technology if patents based on the technology will be subject to a group boycott. Because the Service Providers hold monopoly power, Texas consumers have no choice but to accept whatever quality of network the Service Providers chose

to provide even when it becomes a substandard network because contributors are deterred from participating in standards setting because of the group boycott behavior. Moreover, Ericsson and AT&T both maintain their principal place of business in Texas, and therefore the conspiracy and tortious interference have its situs in Texas. Ericsson's communications seeking to extort ASUSTeK were prepared in Texas. The communications from the Service Providers implementing the group boycott were directed to Celerity in Texas.

46. The harms caused by Defendants also are harms interstate commerce, because the Defendants behavior impacts consumers in all 50 states, as well as because the patents held or protected by the Plaintiffs are in force in all 50 states.

## IV. CAUSES OF ACTION

**Count 1: VIOLATION OF SECTION 1 OF THE SHERMAN ACT BASED ON DEFENDANTS' CONSPIRACY IN RESTRAINT OF TRADE**

47. Plaintiffs incorporate by reference the preceding paragraphs as though fully set forth herein.

48. The facts set forth herein establish that a contract, combination, or conspiracy exists between and among at least T-Mobile, Verizon and AT&T which restrained and continues to restrain trade or commerce among the several States.

49. The agreement forms the basis for the illegal contract, combination, or conspiracy. This agreement is to restrain output and fix prices below the market competitive price for the ATL and IS patented technology

50. The conspiracy, by virtue of Defendants' market power, is unreasonably restrictive of competition and Plaintiffs suffered antitrust injury as a result.

51. Plaintiffs' antitrust injury includes but is not limited to the fact that Defendants' conduct has destroyed the normal market forces that should have made it possible for Plaintiffs to

license or sell its technology. As a result of the conduct of T-Mobile, Verizon and AT&T, the Plaintiffs have been unable to license their technology at normal market price, which has led to lost revenues and opportunities.

52. Unless restrained by this Court, Defendants' unlawful conspiracy will continue to impose continuous injury and loss on Plaintiffs' ability to sell or license its technology.

**Count 2: VIOLATION OF SECTION 2 OF THE SHERMAN ACT BASED ON DEFENDANTS' CONSPIRACY TO CREATE OR MAINTAIN A MONOPSONY**

53. Plaintiffs incorporates by reference the preceding paragraphs as though fully set forth herein.

54. T-Mobile, Verizon and AT&T have combined or conspired in an attempt to obtain and/or in fact, have obtained monopsony power in the market, that power was or is being willfully acquired through the overt acts of T-Mobile, Verizon and AT&T done with a specific intent to achieve monopsony power, and had an effect on a substantial amount of interstate commerce.

55. As detailed herein, the anticompetitive conduct of Mobile, Verizon and AT&T has eliminated competition between them for licenses to ATL and IS Patents and is done with the effect of price fixing and more favorable non-monetary terms than possible in a market unaffected by such anticompetitive conduct.

56. T-Mobile, Verizon and AT&T either accumulated and are maintaining or are accumulating monopsony power over at least the relevant market and have used and are using that power to prevent IS and ATL from being able to sell or license its patent portfolio at normal market prices and to restrain quantities and fix prices at below the normal market rates.

57. T-Mobile, Verizon and AT&T monopsony power is being or was willfully and intentionally acquired. The conspiracy amongst Mobile, Verizon and AT&T alleged herein was undertaken for the specific purpose of obtaining monopsony power.

58. Defendants' monopsony power is not the result of good business skill or acumen, instead it is the product of their illegal conspiracy.

59. Unless restrained by this Court, Defendants' unlawful monopsonization of the market for the purchase, acquisition, or licensing of the ATL and IS patents will continue to impose continuous injury and loss on Plaintiffs ability to license its technology in a market free from such unlawful behavior. The impact being to illegally effect a substantial amount of interstate commerce.

**Count 3: TORTIOUS INTERFERENCE WITH CONTRACT**

60. Plaintiffs fully incorporate each of the preceding factual allegations as if set forth in full herein.

61. A contract giving Celerity exclusive rights to license patents that Ericsson is demanding ASUSTeK license directly to Ericsson royalty free as part of a compulsory grant back exists between Plaintiffs.

62. Defendant Ericsson is willfully and intentionally interfering with that contract.

63. As a result, Plaintiffs suffered damages or harm. For example, Ericsson's extortion of ASUSTeK has caused Celerity to be unable to license the Wireless Patents under terms and conditions which it otherwise should have been able to accomplish, to be precluded from business growth which it should otherwise have achieved, and to be required to incur significant legal expenses to ensure that Celerity's rights are respected separate from the costs of initiating this lawsuit.

**Count 4: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP**

64. Plaintiffs fully incorporate each of the preceding factual allegations as if set forth in full herein.

65. There is reasonable probability that the Service Providers and Celerity would have entered into a contractual relationship were it not for their anti-competitive behavior coupled with Ericsson's extortion of ASUSTeK. This is evidenced by the fact that LG voluntarily agreed to a license from Celerity, and another major manufacturer/seller voluntarily agreed to a license from IS.

66. There are independently tortious or unlawful acts by the Defendants that prevented the relationship from occurring, as noted in the preceding paragraphs.

67. There is a conscious desire by the Defendants to prevent the relationship with individual Service Providers from occurring, or knowledge by the Defendants that the interference was certain or substantially certain to occur as a result of the conduct, as evidenced by, among other facts, Ericsson's acknowledgement that it was engaging in the extortion because "Asustek instead contracted with a licensing agent to initiate litigation against Ericsson's customers in late 2023."

68. There is actual harm or damage suffered by the Plaintiffs as a result of the Defendants' interference. For example, Ericsson's extortion of ASUSTeK has caused Celerity to be unable to license the Wireless Patents under reasonable terms and conditions which it otherwise should have been able to accomplish, to be precluded from business growth which it should otherwise have achieved, and to be required to incur significant legal expenses to ensure that Celerity's rights are respected separate from the costs of initiating this lawsuit.

**Count 5: UNFAIR COMPETITION**

69. Plaintiffs fully incorporate each of the preceding factual allegations as if set forth in full herein.

70. The Service Providers have entered into a contract, combination, or conspiracy to unreasonably restrain trade and impose a group boycott on Plaintiffs. Ericsson's behavior has assisted in this conspiracy.

71. The Defendants' concerted effort to undermine Celerity's exclusive license constitutes a *per se* violation of Section 15.05 of the Texas Business and Commerce Code (Tex. Bus. & Comm. Code 15.05(a)-(c), or in the alternative a violation of the rule of reason.

72. The Defendants have unreasonably restrained competition in the market for the purchase, acquisition, or licensing of technology covered by the patents that Celerity has exclusive rights to license, in the State of Texas and other jurisdictions, by abusing and leveraging their power in the wireless service market.

73. Plaintiffs have suffered and will continue to suffer irreparable antitrust injury to their business and property as a direct and proximate result of the Defendants' unlawful conspiracy.

74. Damage to Plaintiffs because of the Defendants' unlawful conduct is ongoing, and Plaintiffs will prove the amount of damage it has suffered as a result of the Defendants' antitrust violation at trial.

## V. <u>DEMAND FOR JURY TRIAL</u>

75. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demands a trial by jury on all issues so triable.

## VI. <u>REQUEST FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF</u>

76.     Pursuant to Section 15.21(b) of the Texas Business & Commerce Code and Chapter 65 of the Texas Civil Practice & Remedies Code, Plaintiffs hereby request that this Court issue temporary and permanent injunctive relief against the Defendants. Specifically, Plaintiffs seek a temporary and permanent injunctive relief under the principles of equity and the statutes of this state relating to injunctions. *See* 15 U.S.C. § 26; Tex. Bus. & Comm. Code § 15.21(b); Tex. Civ. Prac. & Rem. Code § 65.011(3).

77.     Unless immediately restrained, Defendants will cause probable, imminent, and irreparable harm to the Plaintiffs, as Defendants will continue to suppress the market price that each individual Service Provider would have otherwise paid in the absence of the agreements and each of the Service Providers will continue to refuse to deal with Plaintiffs except at prices substantially below the competitive rates.

78.     Plaintiffs have plead causes of action for (1) Tortious Interference with Contract, and (2) Unfair Competition.

79.     Plaintiffs have a probable right to recover, as under the applicable rules of law, the facts plead tend to support the causes of action alleged herein.

80.     Unless immediately restrained by this Court, the Service Providers will continue to combine or conspire so as to anti-competitively and artificially suppress the price paid by the Service Providers for license to the Wireless Patents or, in the alternative, to effectuate a collective group refusal to license the Wireless Patents at competitive rates.

81.     There will be no adequate remedy at law to compensate for the harm Defendants will cause unless an injunction is issued. The harm Plaintiffs will incur consists of reputational harm, loss of competitive bargaining power, and the obscurement of the market price for licenses

(which, in turn, would yield an improper value-based royalty for use of the patented technology) to the Wireless Patents, for which no adequate remedy at law exists.

82. Accordingly, Plaintiffs request that this Court issue a temporary and permanent injunction against Defendants immediately restraining them from the following conduct:

a. Directly or indirectly engaging in any collective discussions or decisionmaking regarding licensing or negotiating terms for the Wireless Patents;

b. Directly or indirectly engaging in any discussion with any co-Defendant in this lawsuit regarding licensing or negotiating terms for the Wireless Patents; and

c. Initiating or maintaining any legal proceeding for the purpose of inducing ASUSTeK to provide a grant back license to the Wireless Patents as a condition for ASUSTeK obtaining a license to any Ericsson Patents.

83. Plaintiffs are willing to post a bond in an amount to which this Court may deem just and reasonable.

## VII. ATTORNEYS' FEES

84. Pursuant to Section 15.21(a)(1) of the Texas Business & Commerce Code, Plaintiff requests an award of attorneys' fees incurred in pursuit of the relief requested herein in an amount which this Court may deem fair and reasonable. *See* 15 U.S.C. § 4304; Tex. Bus. & Comm. Code § 15.21(a)(1).

## VIII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer, and upon final hearing hereof, that Plaintiffs be awarded all actual, statutory, and punitive damages, be awarded temporary and permanent injunctive relief as sought herein, as well as awarded all attorneys' fees to which it may be entitled, and for all other relief, in law or in equity, to which Plaintiffs may be justly entitled. Plaintiffs further respectfully request that the Court enter preliminary and final orders, declarations, and judgments against Defendants as are necessary to provide Plaintiffs with the following relief:

a. A judgment that T-Mobile, Verizon and AT&T have violated violation of Sections 1 and 2 of the Sherman Act;

b. A judgment that Defendants have violated Texas state law of interference with contract, prospective business relationships, and unfair competion;

c. An award of threefold of the damages Plaintiff shall prove it has sustained on account of the violation of the antitrust laws, including, without limitation, pre-judgment and post-judgment interest;

d. All equitable relief this Court deems just and proper.

DATED: September 16, 2024   Respectfully submitted,

/s/ *Robert Christopher Bunt*
Robert C. Bunt
Texas State Bar No. 00787165
rcbunt@pbatyler.com
**PARKER, BUNT & AINSWORTH, P.C.**
100 E. Ferguson, Suite 418
Tyler, Texas 75702
Tel: (903) 531-3535

**IRELL & MANELLA LLP**
Of counsel (not yet admitted *pro hac vice*)
JASON G. SHEASBY
CA State Bar No. 205455
jsheasby@irell.com
JORDAN NAFEKH
CA State Bar No. 328151
jnafekh@irell.com
1800 Ave of the Stars, Suite 900
Los Angeles, CA 90064

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on September 16, 2024.

/s/ *Robert Christopher Bunt*
ROBERT CHRISTOPHER BUNT