# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| **CELERITY IP, LLC, ASUS TECHNOLOGY LICENSING INC., AND INNOVATIVE SONIC LTD.,** | Civil Action No. |
| Plaintiffs, | 2:24-cv-00721-JRG-RSP |
| vs. | |
| **AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AT&T SERVICES, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, T-MOBILE USA, INC. AND ERICSSON, INC.,** | JURY TRIAL DEMANDED |
| Defendants. | |

## AT&T CORP., AT&T MOBILITY LLC, AT&T MOBILITY II LLC, AND AT&T SERVICES, INC.'S FIRST AMENDED COUNTERCLAIMS

Counterclaim Plaintiffs AT&T Corp., AT&T Mobility LLC, AT&T Mobility II LLC, and AT&T Services, Inc. (collectively "AT&T") bring the following First Amended Counterclaims against Celerity IP, LLC, Asus Technology Licensing Inc., and Innovative Sonic Limited (collectively, "Counterclaim Defendants"). AT&T alleges as follows:

1.      The counterclaims arise under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 and the patent laws of the United States as set forth in Title 35 of the United States Code and in Title 37 of the Code of Federal Regulations.

## PARTIES AND JURISDICTION

2.      Defendant/Counterclaim Plaintiff AT&T Corp. was recently merged and converted into AT&T Enterprises, LLC. AT&T Enterprises, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 208 South Akard St., Dallas, Texas 75202.

3.      Defendant/Counterclaim Plaintiff AT&T Mobility LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

4.      Defendant/Counterclaim Plaintiff AT&T Mobility II LLC is a limited liability company organized and existing under the laws of the State of Delaware, with a principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

5.      Defendant/Counterclaim Plaintiff AT&T Services, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 208 South Akard Street, Dallas, Texas 75202.

6.      Plaintiff/Counterclaim Defendant Celerity IP, LLC ("Celerity") has alleged in its Complaint that it is a limited liability company organized under the laws of the State of Texas.

7.    Plaintiff/Counterclaim Defendant ASUS Technology Licensing Inc. ("ATL") has alleged in its Complaint that it is a Taiwanese corporation, with its principal place of business located at No. 115, Li-De Rd., Beitou District, Taipei, Taiwan, R.O.C.

8.    Plaintiff/Counterclaim Defendant Innovative Sonic Limited ("ISL") has alleged in its Complaint that it is a corporation organized and existing under the laws of the Republic of Mauritius, with its principal place of business at 6Fl, No. 319, Sec. 4 Chung Hsiao E. Rd., Taipei City 106078, Taiwan, R.O.C.

9.    Third-Party ASUSTeK Computer Inc. ("ASUS") is a publicly owned corporation organized under the laws of Taiwan, with its principal place of business at No. 15, Li-Teh Rd., Beitou District, Taipei City 112, Taiwan.

10.    This Court has personal jurisdiction over Counterclaim Defendants. Celerity is a limited liability company organized under the laws of Texas and with its principal place of business in Texas, meaning that it is subject to general personal jurisdiction in Texas. Counterclaim Defendants have consented to personal jurisdiction and venue in this District by litigating this action and the related patent litigation against AT&T in this District. Moreover, ATL and ISL granted Celerity, a Texas entity, rights as the exclusive licensing agent of their patents. ATL and ISL necessarily understood that Celerity would engage in licensing negotiations in Texas. Further, each of the Counterclaim Defendants has committed acts within this District giving rise to this action, and has established minimum contacts with this forum such that the exercise of jurisdiction over Counterclaim Defendants would not offend traditional notions of fair play and substantial justice. Further, the Counterclaim Defendants, through Celerity, regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue in this District and the State of Texas.

## RELEVANT FACTS

### A. Counterclaim Defendants' Patent Lawsuits

11.    On August 25, 2022, Celerity contacted AT&T indicating that it had been retained by Innovative Sonic to act as an "exclusive agent" to license a portfolio of patents originally developed by ASUS and its employees and allegedly declared as essential to one or more of the 3G, 4G, and 5G standards (the "Innovative Sonic Portfolio"). Celerity requested AT&T's availability to "begin licensing discussions" regarding this Portfolio and attached a draft NDA.

12.    In the letter, Celerity accused AT&T of infringing ISL's patents, including U.S. Patent Nos. 9,237,489; 7,664,059; 9,560,559; 9,736,883, by practicing the cellular standards. Celerity told AT&T that Counterclaim Defendants had prepared claim charts showing infringement and demanded a portfolio-wide license.

13.    Celerity's August 25, 2022 letter to AT&T states:

> As ISL's licensing agent, we are reaching out to AT&T to begin licensing discussions around the ISL SEP portfolio on fair reasonable and non-discriminatory ("FRAND") terms. To that end, we would like to discuss how AT&T's network practices one or more of the 3G, 4G and 5G cellular standards, and thus infringe ISL SEPs. . . .
>
> As I am sure you are aware, AT&T has an affirmative responsibility to ensure that it has secured all necessary patent rights to operate its cellular wireless network and provide its cellular services to its customers.
>
> We would like to . . . provide more detail about the portfolio's contents including specific claim charts demonstrating how exemplary patents in the ISL patent portfolio read onto AT&T's network and services that practice the ETSI 3G, 4G and 5G standards. Our goal is to come to an amicable, mutually beneficial FRAND licensing agreement between ISL and AT&T for the ISL portfolio.

14.    Celerity said "it would be best" to execute a non-disclosure agreement, and attached a list of "IS Essential Patents" that it sought to license to AT&T to its letter, including U.S. Patent

Nos. 10,951,359; 10,148,402; 10,798,754; 10,887,868.

15.    On September 22, 2022, Celerity wrote to AT&T again, this time on behalf of ASUS. Celerity told AT&T that it was ASUS's "agent" for the licensing and enforcement of ASUS's cellular essential patents, and accused AT&T of infringing those patents, including 10,951,359; 10,148,402; 10,798,754; 10,887,868; 10,951,383; 10,841,914; 10,827,487; and 10,993,141, by practicing the cellular standards.

16.    Celerity wrote:

As mentioned in my other letter dated August 25, 2022, Celerity IP, LLC ("Celerity") has been retained by Innovative Sonic Limited ("ISL") as its exclusive agent to license and protect its portfolio of 3G/4G/5G Standard Essential Patents ("SEPs") developed by ASUSTek Computer Inc ("ASUS"). Celerity has separately been retained by ASUS to license its portfolio of 3G/4G/5G SEPs. The ASUS SEP portfolio is separate and distinct from the ISL SEP portfolio, but Celerity can discuss licensing both portfolios at the same time.

The ASUS SEP portfolio comprises approximately 16 patent families that are relevant to the operations of AT&T, Inc. ("AT&T") cellular wireless network and have been declared to the ETSI standards body as being standard essential to one or more of the 3G, 4G and 5G standards. An exemplary list of patent families that have been reviewed by independent third parties and verified as essential is attached as Exhibit 1. . . .

As ASUS's licensing agent, we are reaching out to AT&T, Inc. to begin licensing discussions around the ASUS SEP portfolio on fair reasonable and non-discriminatory ("FRAND") terms. To that end, we would like to discuss how AT&T's network practices of the 3G, 4G and 5G cellular standards, and thus infringe ASUS's SEPs. . . .

As I am sure you are aware, AT&T has an affirmative responsibility to ensure that it has secured all necessary patent rights to operate its cellular wireless network and provide cellular services to its customers.

We would like to have a near-term dialogue with AT&T to . . . provide more details about the portfolio's contents including specific claim charts demonstrating how exemplary patents in the

ASUS patent portfolio read on AT&T's network and services that practice the ESTI 3G, 4G and 5G standards. Our goal is to come to an amicable, mutually beneficial FRAND licensing agreement between ASUS and AT&T for the ASUS portfolio. As mentioned above, while they are separate and distinct portfolios, we can discuss the ASUS portfolio license and the ISL portfolio license at the same time.

17.    Celerity attached to its letter a list of "ASUS Essential Patents" that AT&T allegedly infringes and demanded AT&T license them. This list includes 10,951,359; 10,148,402; 10,798,754; 10,887,868; 10,951,383; 10,841,914; 10,827,487; and 10,993,141, by practicing the cellular standards.

18.    On October 7, 2022, AT&T promptly responded to Celerity's request. To advance discussions, AT&T requested further information regarding Celerity's position that AT&T needed a license to the ASUS and Innovative Sonic Portfolios, including an identification of the allegedly infringing products, the patents that Celerity contended were infringed, and claim charts showing how each accused product allegedly infringed each element of each identified patent. AT&T further explained that it could not enter into an NDA with Celerity because it was important that AT&T be permitted to share information regarding Celerity's claims of infringement with its vendors, whose products were implicated by Celerity's infringement allegations.

19.    On October 17, 2022, Celerity responded. While Celerity noted AT&T's "concern about sharing information with the suppliers," Celerity did not offer any viable mechanism whereby AT&T could share information related to Celerity's allegations. Instead, Celerity again attached its "standard NDA" and encouraged AT&T to sign. Celerity indicated to AT&T that it had "claim charts that we can present to [AT&T] to support our infringement positions," and "[w]e also can provide [AT&T] with our FRAND royalty rate."

5

20.     Celerity did not contact AT&T again until January 23, 2023. In this communication, Celerity again noted AT&T's "concern about being able to provide information to your suppliers" but failed to provide any viable mechanism whereby AT&T could share information related to Celerity's allegations with its suppliers. Celerity also indicated that it considered its claim charts to be confidential (without ever identifying any alleged-to-be confidential information) and continued to insist on an NDA as a prerequisite to further discussions, particularly if AT&T was to share information related to Celerity's allegations with its suppliers.

21.     On February 17, 2023 AT&T responded and again noted that its wireless services, including 5G, "are enabled by products that we purchase from our vendors" which was why it was important that AT&T be permitted to share information related to Celerity's allegations with its suppliers. AT&T also explained that it "relies on its vendors not only in support of its wireless services but also in evaluating offers to license patents that allegedly relate to its products." AT&T further explained that if any of its "vendors are unlicensed and Celerity is not already in direct discussions with them, please identify them so that we can ask them to contact Celerity to discuss your license offer."

22.     Rather than provide AT&T with the information requested or engage in any meaningful discussions regarding their claims that AT&T needed a license, Counterclaim Defendants initiated a series of patent infringement actions against AT&T. On October 19, 2023, Celerity, ATL, and Innovative Sonic filed the Patent Cases against AT&T and other entities in the Eastern District of Texas. The Patent Cases assert eight common patents, including U.S. Patent Nos. 9,237,489; 7,664,059; 9,560,559; 9,736,883; 10,148,402; 10,798,754; 10,887,868; and 10,951,359 against AT&T and others. They accuse AT&T and the other defendants of patent infringement relating to base stations implemented on AT&T's 3G, 4G and/or 5G wireless

networks. AT&T implements each of the 3G, 4G, and 5G wireless standards.

23.     In the Patent Cases, Counterclaim Defendants also have asserted declaratory judgment claims relating to the parties' licensing negotiations. On January 18, 2024, AT&T filed counterclaims for declaratory relief regarding non-infringement and for breach of the obligation to negotiate in good faith (the "EDTX Counterclaims").

24.     At no point during the parties' licensing discussions did Celerity withdraw or deny its allegations that AT&T infringes the patents in the ISL and ASUS portfolios listed in the attachments to Celerity's letters, or otherwise indicate that it did not intend to pursue them. Instead, Counterclaim Defendants maintained their allegations that AT&T infringes U.S. Patent Nos. 10,951,359; 10,148,402; 10,798,754; 10,887,868; 9,237,489; 7,664,059; 9,560,559; 9,736,883; 10,951,383; 10,841,914; 10,827,487; and 10,993,141.

**B. Counterclaim Defendants Bring this Suit**

25.     On July 17, 2024, Celerity, ISL, and ATL filed the above-captioned action against Ericsson, AT&T, Verizon, and T-Mobile, alleging that the Carriers entered into a "conspiracy" to refuse to purchase a license from Celerity, and that Ericsson "assisted" in this alleged conspiracy. Counterclaim Defendants filed their Amended Complaint on September 16, 2024, adding overlapping claims for violation of the Sherman Act.

26.     Counterclaim Defendants' damages in this action are composed of what they believe to be lost licensing revenues predicated on their inability to license their "Wireless Patents." While the Amended Complaint fails to identify the specific "Wireless Patents" at issue, Counterclaim Defendants contend they have a portfolio of nearly 100 patents that were the subject of the above described licensing negotiations. Counterclaim Defendants allege that AT&T infringes the Wireless Patents and improperly refuses to license them. AT&T denies that it directly

or indirectly infringes any valid and enforceable claim of the Wireless Patents. And specifically, with respect to the patents identified in these Counterclaims, AT&T does not need a license.

27.     In view of the foregoing, there exists an actual and justiciable controversy between the parties with respect to the alleged infringement of the Wireless Patents. As a result, AT&T brings the following claims for declaratory relief regarding non-infringement of U.S. Patent Nos. 10,951,359; 10,148,402; 10,798,754; 10,887,868; 9,237,489; 7,664,059; 9,560,559; 9,736,883; 10,951,383; 10,841,914; 10,827,487; and 10,993,141.

**FIRST COUNTERCLAIM**
**(Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,951,359)**

28.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-27.

29.     In the Patent Lawsuits and as demonstrated by Counterclaim Defendants' allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents, Counterclaim Defendants have asserted that AT&T infringes the '359 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

30.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '359 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

31.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '359 Patent.

32.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '359 Patent.

## SECOND COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,148,402)

33.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-32.

34.     In the Patent Lawsuits and as demonstrated by Counterclaim Defendants' allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents, Counterclaim Defendants have asserted that AT&T infringes the '402 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

35.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '402 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

36.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '402 Patent.

37.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '402 Patent.

## THIRD COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,798,754)

38.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-37.

39.     In the Patent Lawsuits and as demonstrated by Counterclaim Defendants' allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents, Counterclaim Defendants have asserted that AT&T infringes the '754 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused

Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

40.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '754 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

41.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '754 Patent.

42.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '754 Patent.

## FOURTH COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,887,868)

43.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-42.

44.     In the Patent Lawsuits and as demonstrated by Counterclaim Defendants' allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents, Counterclaim Defendants have asserted that AT&T infringes the '868 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

45.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '868 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

46.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '868 Patent.

47.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '868 Patent.

## FIFTH COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 9,237,489)

48.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-47.

49.     In the Patent Lawsuits and as demonstrated by Counterclaim Defendants' allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents, Counterclaim Defendants have asserted that AT&T infringes the '489 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

50.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '489 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

51.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '489 Patent.

52.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '489 Patent.

## SIXTH COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 7,664,059)

53.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-52.

54.     In the Patent Lawsuits and as demonstrated by Counterclaim Defendants' allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents,

Counterclaim Defendants have asserted that AT&T infringes the '059 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

55.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '059 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

56.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '059 Patent.

57.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '059 Patent.

## SEVENTH COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 9,560,559)

58.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-57.

59.     In the Patent Lawsuits and as demonstrated by Counterclaim Defendants' allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents, Counterclaim Defendants have asserted that AT&T infringes the '559 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

60.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '559 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

61.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '559 Patent.

62.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '559 Patent.

## EIGHTH COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 9,736,883)

63.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-62.

64.     In the Patent Lawsuits and as demonstrated by Counterclaim Defendants' allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents, Counterclaim Defendants have asserted that AT&T infringes the '883 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

65.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '883 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

66.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '883 Patent.

67.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '883 Patent.

## NINTH COUNTERCLAIM
### (Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,951,383)

68.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-67.

69.     Celerity, as licensing agent for ISL, included the '383 Patent in licensing correspondence to AT&T in or around September 2022, and asserted that the '383 Patent was part of "[a]n exemplary list of patent families that have been reviewed by independent third parties and verified as essential" to the 3G, 4G, and 5G standards. Celerity further stated that it "would like to discuss how AT&T's network practices of the 3G, 4G and 5G cellular standards, and thus infringe ASUS's SEPs. Please keep in mind that the list [of allegedly essential patents] is exemplary, and there are likely other Innovative Sonic patents that are being infringed." Counterclaim Defendants demanded that AT&T take a license to their portfolios, including the '383 Patent. Shortly after sending this correspondence as alleged above, Counterclaim Defendants instituted the Patent Lawsuits, alleging infringement of eight patents identified in this correspondence as "essential to the 3G, 4G, and 5G standards." The '383 Patent is included in this same list of "exemplary" patents.

70.     In light of Counterclaim Defendants' (i) representations in their licensing correspondence; (ii) allegations of infringement in the Patent Lawsuits; (iii) allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents; and (iv) Counterclaim Defendants' failure to withdraw their allegations that AT&T infringes the '383 Patent or otherwise indicate that they no longer believe that AT&T infringes, Counterclaim Defendants have asserted that AT&T infringes the '383 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

71.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '383 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

72.    Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '383 Patent.

73.    A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '383 Patent.

**TENTH COUNTERCLAIM**
**(Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,841,914)**

74.    AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-73.

75.    Celerity, as licensing agent for ISL, included the '914 Patent in licensing correspondence to AT&T in or around September 2022, and asserted that the '914 Patent was part of "[a]n exemplary list of patent families that have been reviewed by independent third parties and verified as essential" to the 3G, 4G, and 5G standards. Celerity further stated that it "would like to discuss how AT&T's network practices of the 3G, 4G and SG cellular standards, and thus infringe ASUS's SEPs. Please keep in mind that the list [of allegedly essential patents] is exemplary, and there are likely other Innovative Sonic patents that are being infringed." Counterclaim Defendants demanded that AT&T take a license to the '914 Patent.

76.    Shortly after sending this correspondence as alleged above, Counterclaim Defendants instituted the Patent Lawsuits, alleging infringement of eight patents identified in this correspondence as "essential to the 3G, 4G, and 5G standards."

77.    The '914 Patent is included in this same list of "exemplary" patents.

78.    In light of Counterclaim Defendants' (i) representations in their licensing correspondence; (ii) allegations of infringement in the Patent Lawsuits; (iii) allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents; and (iv) Counterclaim Defendants' failure to withdraw their allegations that AT&T infringes the '914 Patent or otherwise

indicate that they no longer believe AT&T infringes, Counterclaim Defendants have asserted that AT&T infringes the '914 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

79.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '914 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

80.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '914 Patent.

81.     A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '914 Patent.

**ELEVENTH COUNTERCLAIM**
**(Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,827,487)**

82.     AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-81.

83.     Celerity, as licensing agent for ISL, included the '487 Patent in licensing correspondence to AT&T in or around September 2022, and asserted that the '487 Patent was part of "[a]n exemplary list of patent families that have been reviewed by independent third parties and verified as essential" to the 3G, 4G, and 5G standards. Celerity further stated that it "would like to discuss how AT&T's network practices of the 3G, 4G and SG cellular standards, and thus infringe ASUS's SEPs. Please keep in mind that the list [of allegedly essential patents] is exemplary, and there are likely other Innovative Sonic patents that are being infringed." Counterclaim Defendants demanded that AT&T take a license to the '487 Patent.

84.     Shortly after sending this correspondence as alleged above, Counterclaim

Defendants instituted the Patent Lawsuits, alleging infringement of eight patents identified in this correspondence as "essential to the 3G, 4G, and 5G standards."

85.    The '487 Patent is included in this same list of "exemplary" patents.

86.    In light of Counterclaim Defendants' (i) representations in their licensing correspondence; (ii) allegations of infringement in the Patent Lawsuits; (iii) allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents; and (iv) Counterclaim Defendants' failure to withdraw their allegations that AT&T infringes the '487 Patent or otherwise indicate that they no longer believe AT&T infringes, Counterclaim Defendants have asserted that AT&T infringes the '487 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

87.    AT&T has not infringed and does not infringe any valid and enforceable claim of the '487 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

88.    Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '487 Patent.

89.    A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '487 Patent.

## TWELFTH COUNTERCLAIM
### Declaratory Relief Regarding Noninfringement of U.S. Patent No. 10,993,141)

90.    AT&T restates and incorporates by reference each of the allegations of its Counterclaims from paragraphs 1-89.

91.    Celerity, as licensing agent for ISL, included the '141 Patent in licensing correspondence to AT&T in or around September 2022, and asserted that the '141 Patent was part

of "[a]n exemplary list of patent families that have been reviewed by independent third parties and verified as essential" to the 3G, 4G, and 5G standards. Celerity further stated that it "would like to discuss how AT&T's network practices of the 3G, 4G and SG cellular standards, and thus infringe ASUS's SEPs. Please keep in mind that the list [of allegedly essential patents] is exemplary, and there are likely other Innovative Sonic patents that are being infringed." Counterclaim Defendants demanded that AT&T take a license to the '141 Patent.

92.     Shortly after sending this correspondence as alleged above, Counterclaim Defendants instituted the Patent Lawsuits, alleging infringement of eight patents identified in this correspondence as "essential to the 3G, 4G, and 5G standards."

93.     The '141 Patent is included in this same list of "exemplary" patents.

94.     In light of Counterclaim Defendants' (i) representations in their licensing correspondence; (ii) allegations of infringement in the Patent Lawsuits; (iii) allegations in this suit that AT&T is obligated to pay for a license to the Wireless Patents; and (iv) Counterclaim Defendants' failure to withdraw their allegations that AT&T infringes the '141 Patent or otherwise indicate that they no longer believe AT&T infringes, Counterclaim Defendants have asserted that AT&T infringes the '141 Patent, directly and/or indirectly, either literally or under the doctrine of equivalents, through certain Accused Instrumentalities; specifically, Counterclaim Defendants appear to accuse AT&T's network equipment of infringement.

95.     AT&T has not infringed and does not infringe any valid and enforceable claim of the '141 Patent literally, directly, indirectly (such as contributorily or by way of inducement), willfully, or under the doctrine of equivalents.

96.     Accordingly, there exists an actual and justiciable controversy with respect to infringement of the '141 Patent.

97.    A judicial declaration concerning these matters is necessary and appropriate so that AT&T can ascertain its rights regarding the '141 Patent.

## **PRAYER FOR RELIEF**

AT&T respectfully requests that this Court enter judgment in its favor and grant the following relief:

a.   Declare that AT&T has not infringed any claim of the Wireless Patents, contributed to infringement of any claim of the Wireless Patents, and/or induced the infringement of any claim of the Wireless Patents;

b.   Award no damages or equitable relief (including injunction) to Counterclaim Defendants for alleged tortious interference with prospective business relationship arising from refusal to license Counterclaim Defendants' patents which AT&T does not infringe;

c.   Award no damages or equitable relief (including injunction) to Counterclaim Defendants for alleged antitrust violations or unfair competition arising from refusal to license Counterclaim Defendants' patents which AT&T does not infringe;

d.   Award attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

e.   Award to AT&T such other costs and further relief as the Court deems just and proper.

Dated: September 19, 2024

Respectfully submitted,

*/s/ Timothy S. Durst*

Timothy S. Durst, Bar No. 00786924
O'MELVENY & MYERS LLP
2801 North Harwood Street
Suite 1600
Dallas, Texas 75201-2692
Telephone:  (972) 360-1900
Facsimile:  (972) 360-1901
tdurst@omm.com

Ian Simmons (admitted *pro hac vice*)
Julia Schiller (admitted *pro hac vice*)
Brian P. Quinn (admitted *pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414
isimmons@omm.com
jschiller@omm.com
bquinn@omm.com

*Attorneys for Defendants*
AT&T Corp., AT&T Mobility LLC, AT&T
Mobility II LLC, AT&T Services, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been

served on all counsel of record via the electronic mail on September 19, 2024.


*/s/ Timothy S. Durst*
Timothy S. Durst